IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12-CR-25 |
| | ) | |
| JEFFREY BRYAN NICHOLS, | ) | (VARLAN / SHIRLEY) |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28

U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District

Court as may be appropriate. This case came before the Court on May 29, 2012, for an evidentiary

and motion hearing on the Defendant's Motion to Dismiss for Destruction of Evidence and Failure

to Preserve Evidence [Doc. 18], filed on May 2, 2012. Assistant United States Attorney Jennifer

Kolman appeared on behalf of the Government. Attorney Brian E. Nichols represented the

Defendant, who was also present. The parties presented testimony and argument on the pending

motion, which the Court took under advisement at the conclusion of the hearing.

## I. BACKGROUND

Defendant Nichols is charged in a three-count Indictment [Doc. 3] with conspiracy

to commit mail fraud from August 2005 to July 2007, mail fraud, and money laundering. The

Indictment alleges that the Defendant worked for Architectural Graphics Incorporated ("AGI"), a

company that designs and makes signs and brand image products, from 2005 to 2007. [Doc. 3, ¶¶1,

1

3] The Indictment states that Defendant created and forwarded for payment fictitious invoices for subcontracted work purportedly done for AGI by Outdoor Graphic Displays ("OGD"), which is alleged to be a fictitious company. [Doc. 3, ¶¶6-8] The Defendant would also sign "vendor payment review forms," thereby acknowledging the work that was the subject of the invoices was complete, although Nichols knew that OGD had not performed the work. [Doc. 3, ¶9] It is also alleged that through this scheme, Nichols caused AGI to mail checks to a post office box Nichols had set up for OGD. [Doc. 3, ¶¶ 10-11, 13, 16, 18]

## II. POSITIONS OF THE PARTIES

The Defendant asks the Court to dismiss the Indictment because he contends that the Government's failure to obtain and preserve "project books" (notebooks containing photographs that document completed work) violated the Government's duty to disclose exculpatory evidence. He argues that the Government's failure to preserve the project books also violated his constitutional rights to due process and fundamental fairness. He contends that the Government knew the importance of the project books to his case at the time that they were destroyed and that no other comparable evidence exists.

The Government responds that it had no duty to preserve the project books and that the Defendant has failed to show that the project books were exculpatory. It contends that it never had control or custody over the project books and, thus, had no duty to preserve them. Instead, AGI had custody and control of the books up until their destruction, which occurred before law enforcement began investigating this case. Second, it argues that had they not been destroyed, the project books would provide additional evidence of the Defendant's guilt. The Government asserts

2

that at most, the project books are only potentially useful to the Defendant, yet the Defendant cannot

show that the Government acted in bad faith in failing to preserve them. Accordingly, it argues that

the Defendant's motion must be denied.


### III. SUMMARY OF THE TESTIMONY

The Defendant testified in his own behalf that he worked for AGI and that he worked

for OGD, a subcontractor, at the same time. Gary Hopwood, who is now deceased, was his boss at

both companies. AGI contracted with Chase Bank to replace the signs at 70 to 120 banks in

Houston, Texas. Chase Bank hired Monagel, a management company, to oversee the sign

replacement by AGI. The Defendant stated that he inspected and photographed the completed work

at each bank and then submitted the photographs to Monagel. After receiving the photographs of

the work completed by AGI, Monagel would give the Defendant a punch list of changes or repairs

needed. AGI received half of the payment from Chase at the time it was awarded the project and

twenty-five percent upon substantial completion. Chase withheld payment of ten percent until the

punch list was completed.

The Defendant stated that he, Robin Wilson, and John Campbell compiled project

books for the Chase Bank project in Houston. The project books were three three-or-four-inch-thick

binders containing invoices and photographs of completed standard and non-standard work. The

project books were organized by site and the sites were separated by dividers. The books contained

a photograph of every completed job. For each location, the project book would contain the cost of

the sign, the cost of its installation, and a picture of the sign. The photograph often also depicted the

completion of any non-standard work, such as "patch and paint" jobs (repair of the wall in

3

preparation for a new sign). The performance of non-standard work was also documented on the invoice. Sometimes the project book would have a photograph of the wall before it was repaired and a second photograph of the new sign on the repaired wall. The project books contained a single picture of the new sign and the surrounding repaired wall for about seventy percent of the sites. Occasionally, when the job required electrical work, the Defendant would include an additional photograph of the completed work with the sign illuminated. The Defendant testified that the new Chase Bank logo was smaller than the former Bank One logo, and so, the installation of the Chase signs always involved some wall repair. The Defendant testified that the originals of the photographs of the completed work were retained by AGI and copies were sent to Monagel.[1]

On cross-examination, the Defendant testified that the project books contained a detailed accounting of all of the work performed at each bank, including the contract, the invoice, and a photograph or photographs of the completed work. He said that he took a photograph of every job without regard to how big or small the job was. He stated that his boss Gary Hopwood hired the subcontractors who performed the work at the various banks. Hopwood provided the Defendant with an outline of what needed to be done. The Defendant then approved the completion of the work at each bank, once the subcontractor presented an invoice. Each bank required work valued at about $20,000. The work to be done at each bank was not always the same. Some locations required electrical work and some involved paint and patch work. Once he approved the work at the site, the Defendant "signed off" on the paperwork and forwarded it to Hopwood. All the signs in the Chase

---

[1]The Court notes that at the beginning of the hearing defense counsel proffered facts relating to the Chase project books, including that copies of the photographs emailed to Monagel were stored on the Defendant's work computer. With the exception of this fact, the remainder of defense counsel's proffer was also a part of the Defendant's testimony.

Bank project had to be replaced by a deadline set by the FDIC or Chase Bank would be fined.

The Government presented the testimony of AGI Vice President Chris Ragan. Mr. Ragan testified that he was a Vice President and project manager at AGI in 2006 during the Chase project. He stated that the Chase team, including Gary Hopwood and the Defendant, put together project books for the Chase project that showed the scope of the work and contained "completion photographs." Although the project books contained a completion photograph of every sign installed, they did not contain a photograph of every related sub-job.

Mr. Ragan stated that AGI normally retains project books for two to three years after a project is completed, a time frame that corresponds to the warranty on the signs. Mr. Ragan learned of the Chase project books in 2006. These project books were kept at AGI's Knoxville office. After the Defendant was fired, the Defendant and Hopwood asked an AGI employee to get the Chase project books for them. When AGI learned of this, it shipped the Chase project books to AGI's Virginia Beach office. AGI brought its concerns about the Defendant's actions to the attention of the IRS in Virginia Beach in August 2007. At that time, AGI provided the IRS with a summary binder, which AGI had originally created to support its insurance claim for the Defendant's fraud. The IRS told AGI that unless its complaint involved a large sum of money or was related to homeland security, it would be put "at the bottom of the pile." Although the Chase project books were not given to the IRS at that time, the IRS agent was informed of the existence of the project books.

Mr. Ragan testified that the Chase project books, which comprised three or four three-

to-four-inch binders, were destroyed in March[2] when AGI remodeled its Virginia Beach office. He stated that the IRS did not tell AGI to retain the Chase project books. Mr. Ragan said that he did not believe that certain work approved by the Defendant had been completed so he did not think the Chase project books contained any photographs of that work. He believed that nothing in the Chase project books would have been helpful to the Defendant.

On cross-examination, Mr. Ragan testified that he sent a letter to AUSA Kolman stating that AGI was aware of the importance of the Chase project books. Following a insurance claim in August 2007 for theft by the Defendant, AGI destroyed the Defendant's work computer. He stated that Robin Wilson, John Campbell, and Mike Hall also worked on the Chase project books. He testified that documentation of the work for three of the four invoices that comprise the overt acts listed in the Indictment would not have been in the Chase project books because these three invoices related to a separate project, Chase on Loans.[3] Mr. Ragan stated that he did not make the decision to destroy the Chase project books.

The Government proffered that an IRS agent would testify that the Knoxville IRS began investigation of this case in 2011,[4] after AGI had destroyed the Chase project books.

---

[2]Mr. Ragan did not testify to the year that AGI destroyed the Chase project books. In their filings, the Government and the Defendant both state that the destruction occurred in 2011. The Defendant quotes [Doc. 19, p.3] from a April 5, 2012 letter from Mr. Ragan to AUSA Kolman in which Mr. Ragan states that AGI destroyed the Chase project books when it remodeled in 2011. Although this letter was referenced by the parties in oral argument at the hearing, it was not entered into evidence.

[3]AUSA Kolman stated that the fourth invoice in the indictment related to the painting of ATM machines in the Chase project and could have appeared in the Chase project books, if the ATM machines had actually been painted.

[4]In its response [Doc. 20, p.3 n.1], the Government states that the Knoxville IRS office opened the case in September 2011. However, the month was not mentioned in the

## IV. FINDINGS OF FACT

Based upon the testimony at the May 29 hearing, the Court makes the following factual findings:

AGI, a company that designs and manufactures signs, entered into a contract with Chase Bank in 2006 to provide signs for 70 to 120 former Bank One branch banks in Houston, Texas. Chase Bank hired Monagel, a management company, to manage the replacement of the signs at these banks. The Defendant, an employee of AGI, traveled to Houston to oversee the installation of these signs for AGI. The Defendant was tasked with overseeing any preparatory work and approving the completed work at the individual branch banks. When he approved the completed work, the Defendant took a photograph of the installed sign with a digital camera, emailed a copy of the photograph to Monagel, and printed a copy of the photograph. The Defendant placed the printed photographs, along with the invoices and other information relating to the work at a specific bank, in binders organized by location. The Defendant stored the digital photographs on his AGI computer in Knoxville. For the majority of the locations, the Defendant included a single photograph of the sign as installed. For some locations, the Defendant included "before" and "after" photographs that showed the location before the installation of the sign and after. The Defendant photographed every sign for which he approved the completed work.

The Chase project books, three or four large binders documenting the replacement of the signage by AGI at the Chase Banks in Houston, were kept at AGI's Knoxville office. These

---

Government's proffer at the May 29 hearing.

books included documentation provided by the Defendant and at least three other AGI employees.[5]
Documentation of a separate project performed for Chase Bank, the Chase on Loans project, was not
included in the Chase project books. In 2007, AGI discharged the Defendant and destroyed the
Defendant's computer at AGI. It subsequently transferred the Chase project books to its Virginia
Beach office to preserve them for future legal action against the Defendant and his supervisor Gary
Hopwood.

    In August 2007, AGI employees from the Virginia Beach office met with an IRS
agent at the IRS office in Virginia Beach, about suspected fraud by the Defendant and Hopwood.
They showed the agent a summary binder, which had been prepared for insurance purposes,
purporting to document the fraud and told the agent about the Chase project books. The IRS agent
told the AGI employees that their complaint would be put "at the bottom of the pile," if it did not
involve a large sum of money or a matter of homeland security. In March 2011, AGI destroyed the
Chase project books when it remodeled its Virginia Beach office. Later in 2011, the Knoxville office
of the IRS began to investigate AGI's allegations of fraud regarding the Defendant. The Indictment,
charging the Defendant with conspiracy to commit mail fraud, mail fraud, and money laundering
during his employment with AGI, was filed on February 22, 2012.

---

[5]The Court makes no finding as to whether work attributed to OGD on the Chase project
was actually performed, whether the Defendant actually took photographs of the work attributed
to OGD, or whether the Defendant in fact placed photographs of work completed by OGD in the
Chase project books. These questions are matters for the jury to determine at trial. See Fed. R.
Crim. P. 12(b)(2) (providing that the parties may raise pretrial only those issues "that the court
can determine without a trial").

## V. ANALYSIS

The Defendant calls for the dismissal of the Indictment because the Government destroyed exculpatory evidence. The Defendant argues that the Chase project books constitute exculpatory evidence because they are the only way that he can prove that the work invoiced by OGD was actually completed. He asserts that the Government had a duty to preserve the Chase project books once it knew of their existence in August 2007. The Government responds that the Chase project books were not exculpatory evidence because they did not contain photographs of completed work for any of the invoices that are the subject of the overt acts in the Indictment. It also contends that it had no duty to preserve the Chase project books, which were destroyed before it began investigating this case.

The Due Process Clause of the Fourteenth Amendment requires that criminal prosecutions be fundamentally fair. California v. Trombetta, 467 U.S. 479, 485 (1984). Fundamental fairness requires that the "criminal defendant be afforded a meaningful opportunity to present a complete defense." Id. To protect this right, the Supreme Court has held that the government violates due process when it withholds from the defendant favorable evidence that is "material either to guilt or punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). Brady requires the Government to disclose only that evidence that is possessed by the government but not the defendant, is exculpatory or impeaches the credibility of a government witness, and is reasonably likely to affect the outcome of the trial. United States v. Mullins, 22 F.3d 1365, 1371 (6th Cir. 1994). In the instant case, the Court will first determine whether the Chase project books contained exculpatory or potentially exculpatory evidence. Second, the Court will examine whether Government had a duty to preserve the Chase project books at the time of their destruction in March

9

2011. Finally, the Court will consider whether the destruction of the project books violated due process.

### A. Exculpatory Nature of the Chase Project Books

The Defendant contends that the Chase project books would have provided exculpatory evidence in this case, because the photographs contained therein are the only means by which he can prove that OGD performed the work on the Chase project for which it submitted invoices. The Government argues that the Chase project books are not exculpatory. It contends that the allegations in the Indictment relate to four invoices from OGD to AGI. The first or main invoice requests payment for painting numerous ATM's. The Government contends that pictures of the painted ATM's would not appear in the Chase project books because the ATM's were never painted and because Chase never requested that AGI paint the ATM's. The Government argues that the other three invoices referenced in the overt acts relate to smaller projects allegedly performed as a part of the Chase on Loans project. It contends that the Chase project books also would not have contained photographs of completed work relating to these invoices because the Chase on Loans was a separate project, not documented in the Chase project books.

Exculpatory evidence is that which is "favorable" to the defendant, Brady, 373 U.S. at 87, or permits the defendant to impeach a government witness, Bagley, 473 U.S. at 676. Although illusive of precise definition, exculpatory evidence "may make the difference between conviction and acquittal." Id. The Supreme Court has also recognized that due process may require the disclosure of evidence that is potentially exculpatory, i.e., "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated

10

the defendant." Arizona v. Youngblood, 488 U.S. 51, 57 (1988).

In the instant case, the Court finds that the Chase project books could have contained exculpatory evidence. Although the Government denied in argument that Chase Bank contracted with AGI to repaint ATM's in conjunction with installing new signs at the branch banks that were a part of the Chase project, it presented no evidence on the matter. In contrast, the Defendant testified that he took a photograph of every completed job in the Chase project and that the photographs depicted surrounding "non-standard" work, such as repainting, as well as the new signs. The Court finds that if the painting of ATM's was a part of the Chase project, the painted ATM's would ordinarily have been depicted in the "completion photos" included in the Chase project books, at least as part of the background of the newly installed signs thereon. Moreover, Count One charges [Doc. 3, ¶4] the Defendant with conspiring to use an interstate carrier in furtherance of a scheme to defraud from August 2005 through July 2007. The overt acts listed in the Indictment are not exclusive: Count One charges that "the following overt acts, among others, were committed in the Eastern District of Tennessee and elsewhere[.]" [Doc. 3, ¶13] Thus, although the overt acts listed in the Indictment relate to four invoices, only one of which would have been documented in the Chase project books, other work, not specifically mentioned as an overt act in the Indictment, performed by OGD on the Chase project would have been documented in the Chase project books.

It is extremely difficult for the Court to make findings about the nature of evidence that has been destroyed. Id. at 58 (recognizing the inherent difficulty in "'divining the import of materials whose contents are unknown and, very often, disputed'"). The Court can only make inferences from the evidence before it, which in this case is the Defendant's testimony that the Chase project books contained completion photographs of work performed by OGD on the Chase project.

11

Although Mr. Ragan testified that he did not believe that the Chase project books would have been helpful to the Defendant, he did not testify that he was familiar with the entire contents of the project books or that he had reviewed them in detail. On cross-examination, Mr. Ragan agreed that he had not "studied" the Chase project books. Based upon the testimony at the May 29 hearing, the Court finds that the Chase project books were at least potentially exculpatory.

### B. Duty to Preserve

In this case, it is undisputed that neither the Virginia Beach nor the Knoxville IRS office had possession of the Chase project books at the time that they were destroyed in March 2011. Instead, the Defendant argues that the Government's duty to preserve the Chase project books arose in August 2007, when AGI employees told an IRS agent in Virginia Beach of the existence of the Chase project books and their relevance to the allegations of fraud against the Defendant. The Government argues that even if the Chase project books contained exculpatory evidence, it had no duty to preserve the project books before the IRS began investigating the instant case in late 2011.

The government does not have "an undifferentiated and absolute duty to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Youngblood, 488 U.S. at 58. The Defendant argues that the Government has "a duty to preserve evidence . . . that might be expected to play a significant role in the suspect's defense." See California v. Trombetta, 467 U.S. 479, 488 (1984). Brady extends only to that information "'wholly within the *control* of the prosecution[,]'" which includes information held by the investigating law enforcement agency as well as information held by the prosecuting attorney. Owens v. Guida, 549 F.3d 399, 415-16 (6th Cir. 2008) (quoting Coe v. Bell, 161 F.3d 320, 344 (6th Cir. 1998) (emphasis

12

added)).  "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437 (1995).  Thus, in the instant case, the Court must determine when, if ever, the project books came into the IRS's control and the duty to preserve them attached.

At the May 29 hearing, the Defendant argued that the IRS had "constructive possession" of the Chase project books in August 2007, because AGI employees informed an IRS agent from the Virginia Beach office of the existence of the books and of their relevance to their claims about the Defendant.  The Defendant pointed the Court to United States v. Risha, in which the Third Circuit considered whether the government had constructive knowledge and, thus, should have disclosed, that its key witness was benefitting in a separate state case from his testimony against the defendant in the federal case.  445 F.3d 298 (3d Cir. 2006).  The Third Circuit employed the following test to determine whether the government had constructive knowledge:

> (1) whether the party with knowledge of the information is acting on the government's "behalf" or is under its "control"; (2) the extent to which state and federal governments are part of a "team," are participating in a "joint investigation" or are sharing resources; and (3) whether the entity charged with constructive possession has "ready access" to the evidence.

Id. at 304.  The Defendant argues that these three questions reveal that the Government had constructive possession of the Chase project books in this case.  The Court disagrees.

The Court finds that although the IRS is a federal agency, the IRS was not acting in the Government's behalf *in this case* in March 2011, when the project books were destroyed.  This is because the IRS was not investigating this case in March 2011.  Moreover, there is no evidence that AGI was acting on behalf of or under the control of the Government at the time it destroyed the

13

Chase project books in 2011. The second prong of the <u>Risha</u> test underscores this finding because neither the IRS and the United States Attorney's office nor the IRS and AGI were jointly investigating the Defendant's actions in the Chase project in March 2011. Finally, the Court does not find that the Government had "ready access" to the Chase project books at the time they were destroyed. The project books were continuously in AGI's possession, and no one from the IRS had seen them prior to their destruction. The Court finds that knowledge that the project books existed and that AGI employees believed they were important to an investigation that AGI wanted the IRS to undertake is not the same as ready access. Accordingly, employing the test in <u>Risha</u>, the Court does not find that the Government had constructive possession of the Chase project books or a duty to preserve them before they were destroyed in March 2011.

## C. Spoilation of Evidence

In the event that the District Court disagrees with the Court's conclusion that the Government had no duty to preserve the Chase project books at the time they were destroyed, the Court will briefly examine whether the destruction of the project books violated the Defendant's constitutional right to due process of law and a fundamentally fair trial. Not every failure to preserve exculpatory evidence will result in a denial of due process. The "duty [to preserve evidence] must be limited to evidence that might be expected to play a significant role in the suspect's defense." <u>Trombetta</u>, 467 U.S. at 488. Specifically, to trigger the duty to preserve evidence, the exculpatory value of the evidence must be apparent before its loss or destruction, and the defendant must be unable to get comparable evidence by other reasonably available means. <u>Id.</u> at 489. "The destruction of material exculpatory evidence violates due process regardless of whether the government acted

14

in bad faith." United States v. Wright, 260 F.3d 568, 570 (6th Cir. 2001); see also Youngblood, 488

U.S. 51, 57 n.1 (observing that due process, "as interpreted in Brady, makes the good or bad faith

of the [government or law enforcement] irrelevant when the [government] fails to disclose to the

defendant material exculpatory evidence").

        The Supreme Court created a different test with regard to potentially exculpatory

evidence, which is evidence that if subjected to testing might or might not show the defendant's

innocence. Id. at 571. For the destruction of "potentially useful evidence" to violate due process,

> a defendant must show: (1) that the government acted
> in bad faith in failing to preserve the evidence; (2) that
> the exculpatory value of the evidence was apparent
> before its destruction; and (3) that the nature of the
> evidence was such that the defendant would be unable
> to obtain comparable evidence by other reasonably
> available means.

United States v. Jobson, 102 F.3d 214, 218 (6th Cir. 1996); see Youngblood, 488 U.S. at 57-58;

Trombetta, 467 U.S. at 488-89; see also Monzo v. Edwards, 281 F.3d 568, 580 (6th Cir. 2002);

Wright, 260 F.3d at 571.

        The Court turns first to the question of whether the Chase project books contained

material, exculpatory evidence or potentially exculpatory evidence that may or may not have

exonerated the Defendant. Evidence is material if "there is a reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would have been different."

Bagley, 473 U.S. at 682; see also Hamblin v. Mitchell, 354 F.3d 482, 495 (6th Cir. 2003). In

contrast, potentially useful evidence is that evidence "of which no more can be said than that it could

have been subjected to tests, the results of which might have exonerated the defendant."

Youngblood, 488 U.S. at 57. The Supreme Court distinguished this type of evidence from that

15

which is both exculpatory on its face and material to the defense because the Court recognized the inherent difficulty in "'divining the import of materials whose contents are unknown and, very often, disputed.'" Id. at 58 (quoting Trombetta, 467 U.S. at 486).

The Court finds that the Chase project books would have either depicted work completed by OGD on the Chase project or not, without any additional testing or analysis. While the presence of those "completion photographs" in the project books is contested, the Court finds that admission of the Chase project books *containing* completion photographs of work performed by OGD would contradict the allegations in the indictment that the Defendant submitted invoices on behalf of OGD knowing that the work had not been done. Accordingly, the Court applies the test from Trombetta: The exculpatory value of the evidence must be apparent before its loss or destruction, and the defendant must be unable to get comparable evidence by other reasonably available means. Id. at 489.

The Defendant argues that the exculpatory value of the Chase project books was known to the IRS prior to the books' destruction because AGI told the IRS about the project books in August 2007. Mr. Ragan testified that AGI employees met with an IRS agent in Virgina Beach in August 2007 and told the agent about the Defendant's suspected fraud. He stated that the employees gave the IRS agent a summary compiled for an insurance claim and told the agent about the existence of the Chase project books. Although Mr. Ragan acknowledged that AGI was aware of the importance of the Chase project books, he did not say that the AGI representatives told the Virginia Beach IRS agent of their importance. Moreover, AGI believed that the Chase project books provided supporting evidence for its allegations against the Defendant and had transferred the books to its Virginia Beach office for safekeeping. Thus, the AGI representatives likely would not have

16

told the IRS agent that the project books had any exculpatory value, only inculpatory value. The Court finds that it is unclear whether the IRS knew of the exculpatory value of the Chase project books prior to their destruction.

More importantly, the Court finds that the Defendant has failed to show that he is not able to get comparable evidence by other reasonably available means. First, the Defendant testified that he submitted electronic copies of the photographs he took of all completed work to Monagel. Either Monagel or Chase Bank may still have these photographs stored electronically. Second, the person who performed the non-standard work or the bank employees who witnessed the painting or other work could testify that it was actually done. Finally, defense counsel proffered that the Defendant saved copies of the photographs he took of the Chase project on his AGI work computer. Although this computer was destroyed by AGI in 2007, some information found on the computer has been retained, specifically invoices on behalf of OGD that the Defendant had created on his work computer but not submitted. If the hard drive of the Defendant's work computer has been saved or imaged, the stored photographs may still be accessible. Thus, the Court finds that the Defendant has other ways in which he may prove that OGD performed the invoiced work other than the Chase project books.

Finally, the Court finds that if the project books are more appropriately classified as only potentially exculpatory, the Defendant cannot show that the IRS acted in bad faith in failing to preserve the project books. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed":

[R]equiring a defendant to show bad faith on the part of the police

17

> both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

Youngblood, 488 U.S. at 58. Negligence or even gross negligence on the part of the government does not amount to bad faith. Jobson, 102 F.3d at 218. In this case, the IRS took no affirmative action to destroy the project books, nor did it partake in the decision to destroy them. At most, the IRS was merely negligent in not asking AGI to preserve them in the event that it ultimately decided to investigate AGI's allegations. Based upon AGI's representations to the IRS agent in August 2007, the IRS would have deemed the project books to be helpful to its case and would have no motivation to destroy them. Additionally, AGI destroyed the project books while remodeling because it believed they were no longer needed, not to deprive the Defendant of evidence. Thus, the Court finds no evidence of bad faith in this case.

Accordingly, the Court finds that the destruction of the Chase project books does not amount to a due process violation in this case and that the Defendant's request to dismiss the Indictment should be **DENIED**.

18

# VI. CONCLUSION

After carefully considering the motion, memoranda, testimony, and arguments in this case and after reviewing the relevant legal authorities, the Court finds no basis to dismiss the Indictment. For the reasons set forth herein, it is **RECOMMENDED** that Defendant Nichols' Motion to Dismiss for Destruction of Evidence and Failure to Preserve Evidence [**Doc. 18**] be **DENIED**.[6]

Respectfully submitted,

  s/ C. Clifford Shirley, Jr.  
United States Magistrate Judge

---

[6]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

19